JACOB ORESTER, Respondent, v. DAYTON RUBBER MANU-FACTURING COMPANY, Appellant.

**Sale — breach of contract of sale — measure of damages.**

Defendant, a manufacturer of automobile tires, agreed to manufacture, sell and deliver to plaintiff, at a reduction from list price, all the tires that he could sell within a certain territory, in which he should have the exclusive right to distribute and sell such tires. After plaintiff had sold a number of such tires, established a demand for them, and fulfilled all of the obligations imposed upon him, the contract was broken by the defendant by its refusal to supply plaintiff with one thousand tires which he had ordered. In an action for damages for this breach of the contract, the court permitted the jury to award as damages the difference between the market price of the tires and the price fixed in the contract; in effect, the gross profit which the plaintiff might have made had he sold the whole one thousand tires at the prices he had fixed. *Held*, error; that, upon the facts presented, in determining the natural and proximate damages suffered by the plaintiff for the breach of the contract, if certain other methods suggested as adapted to the peculiar circumstances fail of application, plaintiff may prove the ordinary and usual net profits resulting from business conducted in the ordinary and usual way, which he has lost by reason of the breach of contract.

*Orester* v. *Dayton Rubber Mfg. Co.*, 188 App. Div. 949, reversed.

(Argued January 26, 1920; decided February 24, 1920.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the fourth judicial

department, entered May 19, 1919, unanimously affirming a judgment in favor of plaintiff entered upon a verdict.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Stewart F. Hancock* for appellant. The trial court committed reversible error in admitting evidence of the price at which Orester sold as evidence of the market price, in charging the jury that they might award to the plaintiff as damages the difference between the contract price and the market price as established by plaintiff's selling price, and in refusing to adopt as the correct measure of damages that urged by the defendant, viz., the value of plaintiff's contract as measured by his lost profits or the difference between the contract price and the price at which the plaintiff might have purchased articles of similar grade and quality. (Pers. Prop. Law, § 148; *Parsons* v. *Sutton,* 66 N. Y. 92; *Delafield* v. *Armsby Co.,* 131 App. Div. 572, 582; 199 N. Y. 518; *Snell* v. *Remington Paper Co.,* 102 App. Div. 138; *Todd* v. *Gamble,* 148 N. Y. 382; *Schwartz* v. *Morris,* 61 Misc. Rep. 335; *Ideal Wrench Co.* v. *Garvin Machine Co.,* 92 App. Div. 187; 181 N. Y. 573; *Dickenson* v. *Hart,* 142 N. Y. 183; *Wakeman* v. *W. & W. Mfg. Co.,* 181 N. Y. 205; *Taylor* v. *Bradley,* 39 N. Y. 129; *Snell* v. *Remington Paper Co.,* 102 App. Div. 138; *Dunham* v. *Hastings Pavement Co.,* 95 App. Div. 360.)

*Frank E. Young* for respondent. The court adopted the proper measure of damages. (*Sloan* v. *Beard,* 162 N. Y. 327; *Parmenter* v. *Fitzpatrick,* 135 N. Y. 190; *Latimer* v. *Burroughs,* 163 N. Y. 7; *Matter of Johnson,* 144 N. Y. 563; *K. L. Ins. Co.* v. *Nelson,* 78 N. Y. 137.) The defendant's price lists were competent as some evidence of the market value of the goods. (*Harrison* v. *Glover,* 72 N. Y. 451; Abbott's Proof of Facts [3d ed.], 875.)

ANDREWS, J.   It seems that motor tires are made by various manufacturers and sold under different trade names.   The defendant makes what is known as the " Dayton Pneumatic Tire."   Apparently it had never been introduced in Syracuse.   For the purpose, therefore, of creating a demand for it and of distributing it through authorized dealers the defendant agreed to manufacture, sell and deliver to the plaintiff such tires as he might require at a reduction from its list prices as they might be fixed from time to time and further agreed that the plaintiff should have the sole right to distribute and sell these tires in Onondaga and some neighboring counties. In return, he was to " aggressively push " the sale, to provide show rooms, to carry in stock a sufficient supply to meet the trade requirements, and to sell only in the territory allotted to him.

Under this contract some two hundred tires were received and sold by the plaintiff, both at wholesale and retail.   He also fulfilled all the obligations imposed upon him.   Yet the contract was broken by the defendant.   It refused to supply one thousand tires which he had ordered.'   The question before us is as to the proper measure of damages under such circumstances.

The jury was instructed that this measure .was the difference between the market value of these tires in Syracuse and the price fixed in the contract.   It was told further that because of the plaintiff's sales there was such a market value.   In effect, the jury was permitted to award as damages the gross profits which the plaintiff might have made had he sold the whole one thousand tires at the prices he had fixed.

For a wrong, the law's ideal, not always realized, is compensation, neither more nor less.   Theoretically the loss to an injured party because of a broken contract is its value to him.   Yet this rule may not always be safely applied.   He may have in mind or claim that he had in mind some special object which would make the contract

of extraordinary value. It is well to avoid temptation. It is well to have some theory applicable to the majority of cases. The rule is, therefore, limited. As such value, for such loss, he may recover as damages only those that would naturally arise from the breach itself, or those that might reasonably be supposed to have been contemplated by the parties when the contract was made. True this is an arbitrary rule. By it full justice is not always done. But it has seemed a politic one.

Further, the methods by which the result is reached are often standardized. In the case of sales, where the articles may be purchased in the market, the value of the contract to the purchaser is the difference between the price at which in like quantities they may be bought at the time and place of delivery, and the price which he would have had to pay under the contract. This rule assumes, however, the possibility of such a purchase in the market. Then the injured party may obtain the articles but at a greater price. If this is made good, he is compensated. But it may be none can be bought. Then the rule is inapplicable. Some other method by which his loss may be fixed must be used. (*Saxe* v. *Penokee Lumber Co.*, 159 N. Y. 371.)

Such is the case before us. The plaintiff could not purchase the tires from others in Syracuse. He himself was the sole source of supply. Under the circumstances the charge of the trial court was erroneous.

Nor is the error cured by the submission to the jury of other evidence than that of the plaintiff's sales as bearing upon the market price of Dayton tires. There was before it the list price issued by the defendant. This the plaintiff claimed " was the only evidence of market price, aside from the price at which the plaintiff sold." But as the court said it did not appear that anything was sold at the list price, nor had it any tendency to show a market in Syracuse at which such tires might be purchased.

As there must be a new trial, we should determine the proper rule of damages. If there was a market elsewhere at which tires in the quantity desired by the plaintiff could be freely purchased the damages would be the difference between the contract price and the price at that market plus the transportation charges to Syracuse. (*Cahen* v. *Platt*, 69 N. Y. 348; *Wemple* v. *Stewart*, 22 Barb. 154; *Berry* v. *Dwinel*, 44 Me. 255.) Possibly there was such a market although if other buyers from the defendant were limited as was he to sales in specified localities this may be doubtful. In the absence of such a foreign market, if the plaintiff might purchase a substitute tire, equally available for his reasonable purposes, then his damages would be the difference between the market price of such substitute and the contract price. (*Saxe* v. *Penokee Lumber Co.*, 159 N. Y. 371.) It should be remarked, however, that this contract contemplated building up a business for the sale of the "Dayton Pneumatic Tire" and creating a demand for that particular tire. Whether another tire, even equally as good, but sold under another trade name, would be a satisfactory substitute to a dealer in Dayton tires may be at least doubtful. It is, however, a question of fact.

Finally, if none of these tests are practicable another must be adopted. We are not dealing here with circumstances known to both parties at the time the contract was executed, which made it of peculiar value to the plaintiff. We are not concerned with collateral engagements or consequential damages. We seek some formula under which the jury may determine the natural, the usual value of such a contract to any one, under ordinary conditions. (*Baldwin* v. *U. S. Tel. Co.*, 45 N. Y. 744.) No one rule can be adopted to fit every case. As the circumstances vary so must the rule. (*Gallagher* v. *Baird*, 54 App. Div. 398; *Masterton* v. *Mayor, etc., of Brooklyn*, 7 Hill, 61; *Den Bleyker* v. *Gaston*, 97 Mich. 354.) Here the tires were purchased to be resold at a profit. This profit,

if reasonably certain, may be said to measure the value of the contract to the plaintiff. It was this that he lost by the default of the defendant. Not the gross profit, however, which is what the jury was permitted to allow. What the plaintiff might have made had the contract been carried out, was this gross profit less the expenses of the business properly chargeable to the sale of the. Dayton tire. What this would have been, it is for him to show by such evidence as would afford a fair basis for the finding of a jury. A party injured by a broken contract must prove the damages he receives as well as the other elements necessary to permit a recovery.

We decide nothing as to special damages which must be alleged in the complaint. That question is not now before us. We hold only that upon the facts presented, in determining the natural and proximate damages suffered by the plaintiff for the breach of this contract, if the other tests fail, he may prove the ordinary and usual net profits resulting from business conducted in the ordinary and usual way, which he has lost by reason of such breach. (*Talcott* v. *Freedman,* 149 Mich. 577; *Todd* v. *Gamble,* 148 N. Y. 382.)

The judgments of the Appellate Division and the trial court should be reversed and a new trial granted, with costs to abide the event.

HISCOCK, Ch. J., CHASE, COLLIN, CARDOZO, POUND and CRANE, JJ., concur.

Judgments reversed, etc.