FLORES *v.* BASSO.

1. SALES—MEASURE OF DAMAGES FOR BREACH OF CONTRACT.
   Under the uniform sales act (3 Comp. Laws 1915, § 11898, subd. 2), the measure of damages for failure of the seller to deliver goods sold is the difference between the contract price and the market price, and if the goods cannot be obtained in the market, then the measure of damages is the damage which naturally and directly flows from the breach.[1]

2. SAME—WHETHER BUYER DISCHARGED DUTY TO BUY IN OPEN MARKET QUESTION FOR JURY.
   In an action for damages for the breach of a contract for the sale of 15 car loads of a certain quality of California grapes, whether plaintiff, after being notified of the breach, discharged his duty of attempting to buy same in the open market, *held*, a question of fact for the jury, in view of his testimony, which though contradictory was partly explained when he testified that the season was so nearly over that he made no further effort.[2]

[1]Sales, 35 Cyc. p. 633; [2]Id., 35 Cyc. p. 650.
   229—Mich.—37.

3. SAME—SUFFICIENCY OF EVIDENCE ON QUESTION OF DAMAGES FOR THE JURY.

Where there was no market for said grapes at point of destination, testimony by plaintiff as to his profits on the grapes shipped to him, and that he could readily have sold the grapes contracted for if they had been shipped, *held*, sufficient to go to the jury on his measure of damages.[3]

4. SAME—WHETHER SELLER EXCUSED FOR BREACH BY CROP SHORTAGE QUESTION FOR JURY.

Whether defendant should be relieved of performance because of a crop shortage, as provided for in the contract, *held*, a question of fact for the jury, in view of proof that the crop was at least 60 per cent., that defendant sold to other customers and handled 51 cars of this quality of grapes, and there was testimony that grapes of specified quality could have been purchased in the California market at the close of the season if one was willing to pay the price.[4]

Error to Wayne; Webster (Clyde I.), J.  Submitted December 5, 1924.  (Docket No. 141.)  Decided January 28, 1925.

Assumpsit by Orazio Flores against Michael Basso for breach of a contract of sale.  Judgment for defendant *non obstante veredicto*.  Plaintiff brings error.  Reversed, and judgment ordered entered on the verdict.

*L. D. Mayer* and *C. Di Martino* (*Max Kahn*, of counsel), for appellant.

*Anthony Maiullo*, for appellee.

BIRD, J.  Defendant sold to plaintiff, in June, 1920, ten car loads of Zinfandel grapes at $80 a ton.  The grapes were to be loaded and delivered to plaintiff f. o. b. at shipping points in California.  Defendant

[3]Sales, 35 Cyc. p. 632; [4]Id., 35 Cyc. p. 650 (1926 Anno).

also sold to "Kamil and Brecher Produce Company," of Detroit, five cars under a like contract. Subsequently the produce company sold to plaintiff its contract, and defendant was notified thereof. These grapes were to be delivered during the grape season, which included the months of August, September, October and November. Defendant delivered only eight cars. The first car was shipped on August 30th, and the last one was received on November 8th. After shipping the seventh car defendant advised plaintiff that the crop was fifty per cent. short. On October 23d defendant wired plaintiff he was shipping the eighth and last car. This car arrived November 8th. Plaintiff then began this suit to recover his damages resulting from nondelivery of the other seven cars. At the close of the testimony defendant moved for a directed verdict, on the ground that plaintiff had proved no damages. The trial court submitted the case to the jury, reserving the right to set it aside after verdict. The jury returned a verdict for plaintiff of $2,500. Subsequently the court granted defendant's motion and ordered judgment for him *non obstante veredicto,* on the ground that the testimony on the question of damages was too meager to submit to the jury.

The measure of damages for failure to deliver in such cases is the difference between the contract and market price, if there be a market price. If the goods cannot be obtained in the market, then the measure of damages is the damage which naturally and directly flows from the breach thereof. Uniform sales act (3 Comp. Laws 1915, § 11898, subdivision 2).

In a similar case this court said:

"The measure of damages for failure to deliver goods sold, where they can be obtained in the open market, is the additional cost of the goods; where they cannot be obtained in the market, the purchaser is entitled to recover the profits lost through the fault

of the seller." *F. W. Kavanaugh Manfg. Co.* v: *Rosen,* .132 Mich. 44 (102 Am. St. Rep. 378).

This, was approved in *Talcott* v. *Freedman,* 149 Mich. 577.

- The trial court, in substance, gave this rule to the jury, but subsequently concluded the testimony was not sufficient on that question to submit to the jury.

It is argued that when defendant refused to deliver the balance of the grapes, it was the duty of plaintiff to go into the market and purchase the grapes, and his failure to make any effort in this regard would bar his recovery. We think the proof fairly shows that there was no market for this quality of grapes in Detroit or vicinity. There is some proof that there was a market for them in Chicago. At the latter part of the season plaintiff attempted to, and did, purchase a car that was "rolling toward" Chicago. When the car arrived in Chicago it was in bad condition and, therefore,. was not forwarded to him. Zinfandel grapes appear to be a product of California. They are raised within a hundred-mile circle around Lodi and Stockton. The price of Zinfandel grapes was not quoted on the Detroit Fruit Exchange because they are a specialty, and, so far as the record shows, there was no market from which plaintiff could buy such grapes, except in the territory where they are raised.

The trial court, in directing a verdict for defendant, comments about the conflicting testimony of plaintiff in regard to his efforts to purchase the grapes after defendant announced that he could deliver no more. There was an apparent conflict in his testimony, but when construed in connection with his statement "that the season was so nearly over, that he made no further effort," the conflict is in a measure explained. At any rate, the conflict in his testimony was a question for the jury.

In this situation plaintiff's damages were such as naturally and directly flowed from the failure to deliver.    Plaintiff testified that this quality of grapes was in great demand in the season of 1920, because they were suitable for the manufacture of wine.    He further testified that he readily sold all the grapes which he received, and could have sold all he contracted for if he could have gotten them.    He introduced in evidence a table showing the number of boxes or crates in each car; his profits on each box, and his total profit on each car, together with the transportation charges on each car from California. This showed that his profit on the first car was $618.29, and on the eighth car $1,009.47.    He further testified that he sold most of the boxes, or crates, from the car on the team track, and that the demand was sufficient to absorb all of the grapes which he had contracted for.    It was further shown that, when the season opened, grapes were selling in California for $55 or $60 a ton.    When the season closed in November they were selling at $175 a ton.    We think proof of these facts was some testimony bearing on plaintiff's damages, and sufficient to enable the jury to estimate them with reasonable certainty.

The contract provided that defendant should be relieved of performance if there were a crop shortage.    When the price had doubled defendant refused to deliver the last seven cars, and gave as an excuse that the crop was short.    The proof shows that the crop was at least 60 per cent., and that defendant sold to other customers and handled in all 51 cars of this quality of grapes.    A California broker testified, upon cross-examination, that Zinfandel grapes could have been obtained in the California market at the close of the season "if one was willing to pay the price." The record is very persuasive that the reason for the nondelivery of the grapes was due to the high price

rather than to the scarcity.    This question, however, was for the jury.

The judgment will be reversed, and, as no exceptions have been filed by the defendant, a judgment will be rendered in the trial court for plaintiff on the verdict of the jury.    Plaintiff will recover his costs in both courts.

MCDONALD, C. J., and CLARK, SHARPE, MOORE, STEERE, FELLOWS, and WIEST, JJ., concurred.